James L. Wynekoop v. Commissioner. Mary Ita Wynekoop v. Commissioner.
Wynekoop v. Commissioner
Docket Nos. 22909 and 25107.
United States Tax Court
1951 Tax Ct. Memo LEXIS 261; 10 T.C.M. (CCH) 380; T.C.M. (RIA) 51115; April 18, 1951
Melvin D. Wilson, Esq., for the petitioners. A. J. Hurley, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in income tax of $1,197.96 for 1943 and $329 for 1944 against James, and $329 for 1944 against Mary. The only issue is whether compensation which James received in 1943 and 1944 for personal services performed in Ireland is to be excluded from his taxable income under section 116(a). Findings of Fact The petitioners are husband and wife. They reside in Glendale, California. Apparently James filed an individual return for each of the years 1943 and 1944 and Mary filed an individual return for 1944. The returns were filed with the collector of internal revenue for the sixth district of California. James has been a citizen of the *262 United States since his birth in 1905. He was living in a rented room in a boarding house in San Diego, California, in the spring of 1942 and was then a widower with no children. He had been working for Consolidated Aircraft Corporation for about a year. He was earning about $175 per month. He was registered with a Selective Service Board in San Francisco and was classified as II-B until December 31, 1943, after which he was classified as II-B-H. His supervisor at Consolidated asked him whether he had any ties to hold him in the United States and whether he would take a job outside of this country. James said he had no ties here and would be glad to take such work. He applied to Lockheed Overseas Corporation on May 13, 1942 for employment and shortly thereafter entered into a contract of employment with that corporation. The contract recited that the corporation was organizing, equipping, and operating an aircraft depot outside the United States and was employing the petitioner in that connection at $500 per month. The employment was to continue until November 1, 1942 or such later date as might be agreed upon, plus sixty days after return transportation to the United States would *263 be made available. The employer was to furnish transportation from the United States and return unless the employee terminated the employment. The employee was to return to the United States without delay when directed by the employer. The employer was to furnish food, lodging, and medical care during the employment without cost to the employee. The employer could direct the return to the United States of the employee if he developed any unfavorable health condition. The employer could terminate the employment if necessary or advisable in the interests of the Government and upon termination of its contract with the Government. The employment contract was extended until Lockheed closed a part of the base in June 1944. Lockheed applied to the Selective Service Board on May 26, 1942, to permit James to leave the United States and an exit permit was granted authorizing him to leave and be absent from the United States for a period of six months. That permit was renewed every six months during the employment and James was deferred from military service on occupational grounds by reason of his employment by Lockheed. James received a passport on June 6, 1942 which would expire on December 6, 1942. It *264 was valid only for travel in the British Isles and Ireland. He was admitted to Ireland as an employee of Lockheed under a visa good for three months only and under which he was not to engage in business without the consent of the Minister of Labor, he was not allowed to remain indefinitely, and was not allowed to establish residence therein. Lockheed periodically renewed the passport. James, in accordance with the contract, embarked from New York on June 12, 1942, with many others similarly employed, and arrived at Belfast, North Ireland, on June 25, 1942. He left Belfast on July 1, 1944 to return to the United States and arrived in this country on July 12, 1944. A sensational murder occurred in James' family in 1933 and thereafter he felt that he was several times discharged from jobs solely because he was recognized as a member of that family. He welcomed the opportunity to leave this country, thinking that this unfavorable notoriety might not follow him, and he decided before leaving New York that he would not return to this country if he could avoid it after his war work with Lockheed would end. He took with him as baggage all of his possessions, except some photographic equipment *265 which he was not permitted to take. He arranged to purchase some additional photographic equipment before leaving. He planned to have all such equipment sent to him as soon as restrictions would be removed. He took with him a type of advertising film invented by him which he thought could be used commercially. He hoped to establish himself in a business based upon photography in the British Isles. He got into an argument with his supervisor on the way to Belfast and the latter threatened to expose his past. James first worked at Langford Lodge as an inspector. The friction between him and his supervisor caused him to ask for release or transfer and he was transferred in July 1943 to Sydenham Airport in Belfast where he worked during the remainder of his stay in Ireland. He had a room in a barracks at Langford Lodge which was available during his entire stay in Ireland. Some of his work clothes were furnished by Lockheed. Ninety per cent of his pay was deposited by Lockheed in a Los Angeles bank at his request. He withdrew some money from that account and deposited it in a Belfast bank. James met Mary Ita Cinnamond, an Irish girl, in Belfast in July 1942. They announced their *266 engagement on October 17, 1942 and were married on April 28, 1943. Twin sons were born to the couple on January 30, 1944. James took instructions and entered the Roman Catholic Church in 1943. He engaged in some social and recreational activities in Belfast and discussed with several persons the possibility of establishing a business there after the war. James lodged at Mary's father's house about 60 per cent of the time from September 1942 until the date of the marriage. Thereafter he obtained permission to live off the base and they lived at two places in Belfast and at his father-in-law's home until he left to return to the United States. He paid his own board and lodging while occupying rented quarters. He purchased some household equipment such as china, glass, linen, bed clothes and a large clock for use while living off the base. He tried unsuccessfully to buy a house. He obtained ration cards for himself and his sons. James began to suffer from rheumatism in November 1943 due to the damp climate of Ireland. He consulted doctors and decided in the early part of 1944 that he would have to leave Ireland and go to a drier climate in California. James had filed a request in *267 June 1943 for an immigration permit under which Mary could remain here permanently. He notified Lockheed that he would try to arrange his own transportation to the United States but he was unable to arrange it because of travel restrictions and returned to the United States on transportation provided by Lockheed, in accordance with his contract of employment, after Lockheed had closed a large part of the base and was returning a number of its employees to the United States. James continue to work for Lockheed after he returned to the United States. He rented a house in California. Mary was issued a British passport dated April 25, 1944. She and the twins arrived in the United States on October 12, 1944 and she entered the United States on a non-quota immigration visa dated September 19, 1944. The Commissioner in determining the deficiency for 1943 held that $6,500, representing compensation received by James for personal services rendered while he was temporarily employed in Northern Ireland, was taxable under section 22 and was not excluded under section 116. He held, in determining the deficiencies for 1944, that similar income in the amount of $3,411.18 was taxable one-half *268 to each petitioner under California community property law because it was taxable under section 22 and was not excluded under section 116. James was not a bona fide resident of a foreign country within the meaning of section 116, Internal Revenue Code, during all of 1943 or for a period of two years before he returned to the United States in 1944. The stipulations of the parties are incorporated herein by this reference. Opinion MURDOCK, Judge: It has been held in prior decisions that others similarly employed by Lockheed were at no time during their stay outside the United States bona fide residents of a foreign country within the meaning of section 116, I.R.C.Michael Downs, 7 T.C. 1053, affirmed 166 Fed. (2d) 504, certiorari denied 334 U.S. 832; Ralph Love, 8 T.C. 400; Dudley A. Chapin, 9 T.C. 142. Cf. Rolf Jamvold, 11 T.C. 122. Love married an Irish girl and was accepted upon condition that they would live in Ireland. There were findings in that case that he investigated business conditions and had a definite intention of entering business and permanently residing there *269 as soon in the future as that would be possible. The present case is not very different and the differences in the facts do not serve to distinguish the cited cases as authorities. James concluded before he left that he would not return, but that was no more than a hope because he did not know what he would be able to do. The evidence shows that his first intention was to complete the employment with Lockheed and only thereafter was he intending to do something about remaining longer. He never did anything definite or conclusive to establish a residence in Ireland. His entire time there was on a temporary basis as an employee of Lockheed and for reasons set out in the findings of fact he was never free to remain there except for the purposes of that employment. He even had to abandon his hopes of remaining in Ireland soon after he began to suffer from rheumatism. James could not and did not establish a residence in Ireland during 1943 or 1944 which would justify exclusion of his income under section 116. Decision will be entered for the respondent.